# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

Plaintiff and Respondent,

v.

CHRISTOPHER STRONG,

Defendant and Appellant.

S266606

Third Appellate District

C091162

Sacramento County Superior Court

11F06729

August 8, 2022

Justice Kruger authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Groban, Jenkins, and Guerrero concurred.

PEOPLE v. STRONG

S266606


Opinion of the Court by Kruger, J.


In Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), the Legislature significantly narrowed the scope of the felony-murder rule. It also created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory but who could not have been convicted under the new law. Resentencing is available under the new law if the defendant neither killed nor intended to kill and was not "a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2." (Pen. Code, § 189, subd. (e)(3); see *id.*, § 1172.6; Stats. 2018, ch. 1015, §§ 3–4; Stats. 2022, ch. 58, § 10.) This provision repurposes preexisting law governing felony-murder special-circumstance findings — the findings a jury makes in felony-murder cases to determine whether the defendant may be sentenced to death or life without possibility of parole (Pen. Code, § 190.2, subd. (d)) — to define eligibility for sentencing relief.

In this case, defendant Christopher Strong seeks resentencing even though the jury that convicted him of felony murder in 2014 also found true felony-murder special-circumstance allegations that he was a "major participant" who acted "with reckless indifference to human life" within the meaning of Penal Code section 190.2, subdivision (d). He contends that the jury's findings should not preclude him from making a prima facie showing of eligibility for relief because the

findings were made before this court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which for the first time provided substantial guidance on the meaning of the two relevant statutory phrases. We agree. We reverse the contrary judgment of the Court of Appeal and remand for further proceedings.

## I.

In 2007, Strong and an accomplice attempted to rob a local drug dealer in his home. During the robbery, the accomplice fatally shot a friend of the drug dealer, Sean Aquitania, and Aquitania's infant son. In 2014, a jury convicted Strong of various crimes, including two counts of first degree murder with multiple-murder and felony-murder special circumstances. (Pen. Code, §§ 187, 190.2, subd. (a)(3) [multiple murder], (17)(A) [robbery felony murder], (17)(G) [burglary felony murder].) He was sentenced to two terms of life without the possibility of parole and an additional 36 years. After Senate Bill 1437 took effect in 2019, Strong filed a petition for resentencing based on relevant changes to felony-murder law.

We begin by describing the law that governed at the time of Strong's trial and the subsequent legal developments that have given rise to the question before us.

## A.

Under the felony-murder doctrine as it existed at the time of Strong's trial, "when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony," the defendant could be found guilty of the crime of murder, without any showing of "an intent to kill, or even implied malice, but merely an intent to commit

2

the underlying felony." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.) Murders occurring during certain violent or serious felonies were of the first degree, while all others were of the second degree. (Pen. Code, § 189, subds. (a), (b); *Gonzalez*, at p. 654.)

Then, as now, a defendant convicted of first degree murder could be punished by a sentence of death or life without possibility of parole if the trier of fact found the murder's commission involved one of several statutorily defined special circumstances. (Pen. Code, § 190.2.) These special circumstances serve a constitutionally required role by narrowing the class of individuals eligible for the death penalty to those whose actions and mental state are sufficiently egregious to potentially warrant that penalty. (*People v. Bacigalupo* (1993) 6 Cal.4th 457, 467–468; see, e.g., *Loving v. United States* (1996) 517 U.S. 748, 755.) The special circumstance at issue here, the felony-murder special circumstance, applies to certain murders committed in the course of one of a dozen of the most serious felonies, including robbery, rape, arson, carjacking, and first or second degree burglary. (Pen. Code, § 190.2, subd. (a)(17).) Like the other special circumstances, the felony-murder special circumstance applies to defendants who actually killed (*id.*, subd. (b)) or who abetted a murder with the intent to kill (*id.*, subd. (c)). But unlike the other special circumstances, the felony-murder special circumstance also applies to some convicted murderers who neither killed nor intended to kill, namely, "major participant[s]" in the underlying felony who acted "with reckless indifference to human life." (*Id.*, subd. (d).)

This latter provision, extending felony-murder special-circumstance liability to major participants, was added by voter initiative in 1990. (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990) § 10; *Banks, supra*, 61 Cal.4th at p. 798.) The major participant and reckless indifference phrases were "derive[d] verbatim" from United States Supreme Court precedent concerning the permissible scope of capital punishment for felony murder. (*People v. Estrada* (1995) 11 Cal.4th 568, 575, citing *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*).) But for the next quarter century, neither the United States Supreme Court nor California courts offered much guidance about the major participant or reckless indifference standards, except to indicate that neither phrase is used in a specialized or technical sense in Penal Code section 190.2, subdivision (d). (*Banks*, at p. 800; see *Estrada*, at pp. 574–578 [addressing court's instructional duties concerning the reckless indifference element]; *People v. Proby* (1998) 60 Cal.App.4th 922, 933 [addressing the major participant element].)

We first undertook to provide that guidance in *Banks*. The specific issue concerned the meaning of the major participant element: "[U]nder what circumstances an accomplice who lacks the intent to kill may qualify as a major participant" for purposes of the felony-murder special circumstance. (*Banks, supra*, 61 Cal.4th at p. 794.) Because the language derived from United States Supreme Court felony-murder precedent, we looked to that case law for guideposts. The cases, which delineated the limits on capital punishment for felony murder under the Eighth Amendment of the federal Constitution, "collectively place[d] conduct on a spectrum" of defendant culpability, "with felony-murder participants eligible for death

4

only when their involvement [was] substantial and they demonstrate[d] a reckless indifference to the grave risk of death created by their actions." (*Banks*, at p. 794; see *id.* at p. 800.) Toward one end of the spectrum was the getaway driver the high court found constitutionally ineligible for death in *Enmund v. Florida* (1982) 458 U.S. 782, 797–801: a " 'minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state.' " (*Banks*, at p. 800.) Toward the other end of the spectrum were the confederates found eligible for death in *Tison*, *supra*, 481 U.S. 137, who had broken convicted murderers out of jail, armed them, captured an innocent family, "held [the family] at gunpoint while the two murderers deliberated whether the family should live or die, [and] then stood by while all four members were shot." (*Banks*, at p. 802.)

Examining the two high court decisions, *Banks* identified a series of considerations to help guide the inquiry into "whether a defendant's culpability is sufficient to make him or her death eligible" under the Eighth Amendment and, by extension, under California statutory law incorporating the Eighth Amendment standard. (*Banks*, *supra*, 61 Cal.4th at p. 803.) The considerations, we said, "are these: What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?

What did the defendant do after lethal force was used?" (*Ibid.*, fn. omitted.) We explained that none of these considerations is dispositive. Rather, "[a]ll may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]." (*Ibid.*)

Although *Banks* focused primarily on the major participant element, the decision also discussed the reckless indifference element. Again citing the high court precedent's overarching concern with assessing individual culpability for felony murder, we held that knowing participation in an armed robbery, standing alone, is insufficient to establish a defendant's reckless indifference to human life. (*Banks*, *supra*, 61 Cal.4th at pp. 807–811.) In so holding, we disapproved the contrary decisions of several Courts of Appeal. (*Id.* at p. 809 & fn. 8.)

We returned to these issues the following year in *Clark*, *supra*, 63 Cal.4th 522. We there reiterated the *Banks* standard governing major participation. But the core of *Clark*'s holding rested on the reckless indifference element. Once again looking to high court precedent for guidance, we concluded that " 'reckless indifference,' . . . encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Id.* at p. 617.) Much as in *Banks*, we set out a nonexhaustive list of considerations relevant to this determination, including use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration

of the crime, knowledge of any threat the confederates might represent, and efforts taken to minimize risks. (*Id.* at pp. 618–623.) Because the major participant and reckless indifference elements often " 'significantly overlap' " (*id.* at p. 615, quoting *Tison*, *supra*, 481 U.S. at p. 153), this list of factors also overlapped with those we had identified in connection with the major participation inquiry in *Banks*.

*Banks* and *Clark* both substantially clarified the law governing findings under Penal Code section 190.2, subdivision (d): *Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry. Before Senate Bill 1437, the effect of these decisions was litigated largely in habeas corpus proceedings challenging special circumstance findings made before *Banks* and *Clark*. We considered one such challenge in *In re Scoggins* (2020) 9 Cal.5th 667, which concerned a habeas corpus petition filed by a defendant who had already unsuccessfully challenged his felony-murder special circumstance on direct appeal. Ordinarily, such a claim would have been procedurally barred (see *In re Waltreus* (1965) 62 Cal.2d 218, 225), but an exception applied to claims where there is no material dispute as to the facts of conviction and an intervening clarification of the law reveals that the defendant's conduct was not prohibited by the statute. (*Scoggins*, at pp. 673–674.) We held that Scoggins was entitled to relief because, given the undisputed facts of his case, his conduct was not within the scope of the felony-murder special-circumstance statute as it had now been interpreted in *Banks* and *Clark*. (*Scoggins*, at pp. 683–684.) A number of Courts of Appeal

7

reached similar conclusions in other cases, vacating felony-murder special circumstances because the undisputed facts established petitioners' conduct did not satisfy the *Banks* and/or *Clark* standards. (See, e.g., *In re Taylor* (2019) 34 Cal.App.5th 543, 546–547; *In re Ramirez* (2019) 32 Cal.App.5th 384, 404–406; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1007; *In re Miller* (2017) 14 Cal.App.5th 960, 966–967.)

## B.

In 2017, the Legislature adopted a concurrent resolution declaring a need to reform the state's homicide law "to more equitably sentence offenders in accordance with their involvement in the crime." (Sen. Conc. Res. No. 48, Stats. 2017 (2017–2018 Reg. Sess.) res. ch. 175 (Resolution 48).) The next year, the Legislature followed through with Senate Bill 1437, which made significant changes to the scope of murder liability for those who were neither the actual killers nor intended to kill anyone, including certain individuals formerly subject to punishment on a felony-murder theory. (See Stats. 2018, ch. 1015, § 1, subd. (c) [measure intended to address need for change identified in Resolution 48].)[1]

As relevant here, Senate Bill 1437 significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the

---

[1]  In addition to the changes to the felony-murder rule at issue in this case, Senate Bill 1437 eliminated second degree murder liability predicated on the natural and probable consequences doctrine. (Pen. Code, § 188, subd. (a)(3); see *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)

intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Gentile*, *supra*, 10 Cal.5th at p. 842.) Penal Code section 189, as amended, now limits liability under a felony-murder theory principally to "actual killer[s]" (Pen. Code, § 189, subd. (e)(1)) and those who, "with the intent to kill," aid or abet "the actual killer in the commission of murder in the first degree" (*id.*, subd. (e)(2)). Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were "major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2" — that is, the statute defining the felony-murder special circumstance. (*Id.*, § 189, subd. (e)(3).)

Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended. (See Pen. Code, § 1172.6 (section 1172.6); *People v. Lewis* (2021) 11 Cal.5th 952, 959–960; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.)[2] Under newly enacted section 1172.6, the process begins with the filing

---

[2] This provision was originally codified as Penal Code section 1170.95 (section 1170.95). In the wake of our decision in *People v. Lewis*, *supra*, 11 Cal.5th 952, the Legislature amended section 1170.95 to adopt certain of *Lewis*'s holdings. (Stats. 2021, ch. 551, § 1, subd. (b).) The Legislature later renumbered the provision without substantive change, effective June 30, 2022. (Stats. 2022, ch. 58, § 10.) Unless otherwise noted, citations in this opinion are to the current version of the provision as codified in section 1172.6.

of a petition containing a declaration that all requirements for eligibility are met (*id.*, subd. (b)(1)(A)), including that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019," the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3)).

When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition "to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c); see *People v. Lewis*, *supra*, 11 Cal.5th 952 [interpreting the prima facie requirement as originally codified in former § 1170.95].) If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. (See § 1172.6, subd. (c); *Lewis*, at pp. 970–972.) If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." (§ 1172.6, subd. (c).) If there has been "a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (*Id.*, subd. (d)(2).) Additionally, the parties may stipulate that the petitioner is eligible for resentencing. (*Ibid.*) Otherwise, the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under state law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient

to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid.*) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

## C.

When Strong petitioned for resentencing under Senate Bill 1437, he submitted a declaration attesting that under the recent Penal Code amendments he could not now be convicted of first or second degree murder. The People opposed the petition, arguing that Strong could not make a prima facie showing of eligibility for relief because his 2014 conviction for special circumstance felony murder established that he was either an actual killer, had directly aided and abetted murder with the intent to kill, or was a major participant in the underlying felony who acted with reckless indifference to human life. (See Pen. Code, § 189, subd. (e).)

The trial court denied the petition. It agreed with the People that the special circumstance finding, which had never been overturned or vacated, meant that Strong could have been convicted of murder even if Senate Bill 1437 had been in effect at the time of trial.

The Court of Appeal affirmed. (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.].) The court acknowledged a burgeoning split among the appellate courts over whether pre-*Banks/Clark* felony-murder special-circumstance findings, like the findings in Strong's case, bar resentencing. The court in this case sided with a line of precedent that has held such findings

categorically preclude relief unless they have been vacated or set aside on direct appeal or collateral review. (See, e.g., *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted Oct. 14, 2020, S264033.) Other courts have concluded that pre-*Banks* and *Clark* findings do not pose a categorical bar but may foreclose relief if a court determines that sufficient evidence supports the findings under the *Banks* and *Clark* standards. (See, e.g., *People v. Secrease* (2021) 63 Cal.App.5th 231, review granted June 30, 2021, S268862.) And still other courts have concluded that such findings pose no bar because the decisions in *Banks* and *Clark* significantly changed the prevailing understanding of the relevant elements. (See, e.g., *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011.)

We took review to resolve the split. We now conclude the final group of courts is correct: Findings issued by a jury before *Banks* and *Clark* do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437. This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*.

## II.

Although the Courts of Appeal have divided on the question presented, their decisions reveal a bit of common ground.

Senate Bill 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2." (Pen. Code, § 189, subd. (e)(3); see § 1172.6, subd. (a).) The latter reference is to

the same statute, containing the same two elements, that this court had clarified in *Banks* and *Clark*, shortly before Senate Bill 1437 was enacted. (Compare Pen. Code, § 189, subd. (e)(3) with *id.*, § 190.2, subd. (d).) It is undisputed that when Senate Bill 1437 amended Penal Code section 189 to incorporate major participation and reckless indifference requirements, it codified the understanding of those requirements elucidated in *Banks* and *Clark*. (See *People v. Price* (2021) 71 Cal.App.5th 1128, 1150–1151 & fn. 16, review granted Feb. 9, 2022, S272572; *People v. Secrease, supra*, 63 Cal.App.5th at p. 254, rev.gr.; cf. Res. 48, *supra*, res. ch. 175, citing *Banks*.) It is also undisputed that findings made after *Banks* and *Clark* ordinarily establish a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude the defendant from making a prima facie case for relief. If a jury has determined beyond a reasonable doubt that a defendant was a major participant who acted with reckless indifference to human life, as those phrases are now understood and as the Legislature intended them to be understood when incorporating them into Penal Code section 189, then that defendant necessarily could still be convicted of murder under section 189 as amended. (See, e.g., *People v. Farfan* (2021) 71 Cal.App.5th 942, 953–956; *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419.)

But do findings made before *Banks* and *Clark* have the same effect? Here is where Courts of Appeal — and the parties — have diverged. In the view of the Court of Appeal below and the Attorney General, section 1172.6, properly interpreted, categorically forecloses any argument for a different result based on an intervening change in the law. We

13

are unpersuaded that section 1172.6 imposes such an absolute bar.

## A.

Courts finding a categorical bar, including the Court of Appeal in this case, have reasoned that the plain language of section 1172.6's eligibility provision does not permit resentencing of petitioners previously found to have been major participants who acted with reckless indifference to human life, regardless of any contention based on changes wrought by *Banks* and *Clark*. (See, e.g., *People v. Nunez* (2020) 57 Cal.App.5th 78, 94–95, review granted Jan. 13, 2021, S265918; *People v. Jones* (2020) 56 Cal.App.5th 474, 484, review granted Jan. 27, 2021, S265854; *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted Nov. 18, 2020, S264978; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted Oct. 14, 2020, S264284, review dism. Apr. 13, 2022.) These courts have relied on section 1172.6, subdivision (a)(3), which limits eligibility for resentencing to those who "could not presently be convicted of murder or attempted murder *because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019.*" (Italics added.) According to the leading case on this point, for a petitioner with a pre-*Banks*/*Clark* true felony-murder special circumstance, "the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants

in an underlying felony and acted with reckless indifference to human life." (*Galvan*, at p. 1142.)

This reasoning does not withstand scrutiny. It ignores that, for any petitioner with pre-*Banks*/*Clark* felony-murder special-circumstance findings, "the alleged inability to obtain such a conviction" (*People v. Galvan*, *supra*, 52 Cal.App.5th at p. 1142) depends in the first instance on the changes in murder liability for which Senate Bill 1437 is responsible. To see the point, consider a defendant who is convicted of murder with a felony-murder special circumstance before *Banks* and *Clark*, but for whom the evidence would not have been sufficient under the *Banks* and *Clark* clarifications of the standards. After *Banks* and *Clark*, but before the 2019 changes to Penal Code section 189, the defendant certainly could have sought habeas corpus relief to vacate the special circumstance. (See *In re Scoggins*, *supra*, 9 Cal.5th at pp. 673–676.) But the defendant could not have sought relief from the underlying murder conviction, since nothing about *Banks* or *Clark* affected that portion of the verdict. Those decisions clarified the line between special circumstance murder liability and ordinary murder liability; they did not alter or otherwise affect the boundary conditions for murder liability itself. Only after the Legislature amended section 189 would the defendant have had an argument for ineligibility for murder. In other words, it is indeed "because of changes to" section 189 made by Senate Bill 1437 that the defendant could not today be convicted of murder. (§ 1172.6, subd. (a)(3); see *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 431, review granted Aug. 18, 2021, S269792; *People v. Harris* (2021) 60 Cal.App.5th 939, 956–957, review granted Apr. 28,

15

2021, S267802; *People v. York* (2020) 54 Cal.App.5th 250, 261, review granted Nov. 18, 2020, S264954.)

It is of course true that this hypothetical defendant's claim for resentencing also depends, in a "but for" sense, on *Banks* and *Clark*; if those decisions had not clarified the law regarding the relevant elements, the defendant would have no argument for relief under Senate Bill 1437. But those changes matter for resentencing purposes only because the Legislature chose to write the same elements into its revised definition of murder. And section 1172.6, subdivision (a)(3)'s "because of" language does not require a showing that a claim to relief under Senate Bill 1437 arises from *no other* cause — only that the 2019 changes supply a basis for the claim and so are *a* cause. For defendants like Strong, they are.

**B.**

The Attorney General makes a different argument in defense of the Court of Appeal's categorical approach. Invoking the reasoning of several Courts of Appeal, the Attorney General contends that resentencing under Senate Bill 1437 is categorically unavailable to a defendant with a prior felony-murder special-circumstance finding because a section 1172.6 petition is not the proper vehicle for setting the finding aside; such findings may be set aside only on direct appeal or through a habeas corpus petition. (See *People v. Nunez, supra,* 57 Cal.App.5th at pp. 95–96, rev.gr.; *People v. Jones, supra,* 56 Cal.App.5th at p. 483, rev.gr.; *People v. Gomez, supra,* 52 Cal.App.5th at p. 17, rev.gr.)

The Attorney General relies for this argument on a provision of section 1172.6 that expressly preserves other

16

avenues of relief: "This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner." (§ 1172.6, subd. (f).) He also notes that another provision of the statute expressly addresses the effect of prior findings that are favorable to the defendant: "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (*Id.*, subd. (d)(2).) On its face, this provision applies most naturally to situations in which a defendant was charged with a felony-murder special circumstance and the trier of fact found the circumstance not true (see, e.g., *People v. Clayton* (2021) 66 Cal.App.5th 145, 154–157), but some Courts of Appeal have held it also applies in situations where the defendant has obtained habeas corpus relief from the special circumstance finding (see, e.g., *People v. Ramirez* (2020) 41 Cal.App.5th 923, 926–927, 932–933). Assuming the provision applies in such situations, the Attorney General argues this incentive for defendants to set aside prior findings before filing a section 1172.6 petition indicates that the Legislature intended to require them to do so.

We agree with the Attorney General that a defendant *may* still challenge prior adverse special circumstance findings in other types of proceedings, just as the defendant could have before section 1172.6 was enacted. But nothing in section 1172.6 says that a defendant *must* always do so before seeking resentencing. Nor can we imply such an exhaustion requirement from either of the provisions on which the Attorney General relies, neither of which has any direct bearing on the issue before us. (See *People v. Secrease, supra,* 63 Cal.App.5th

17

at p. 256, rev.gr. [former § 1170.95, subd. (f) implies resentencing remedy is cumulative to habeas corpus remedy]; *People v. York, supra*, 54 Cal.App.5th at p. 264, rev.gr. (conc. opn. of Baker, Acting P. J.) [nothing in the text of former § 1170.95 "compels the conclusion that a habeas corpus petition must precede the filing of a [former] section 1170.95 petition in a special circumstance case"].)

The Attorney General also observes that the findings accompanying enactment of Senate Bill 1437 evince a concern with inequities in the existing law of murder and a desire to correct the law "to more equitably sentence offenders in accordance with their involvement in homicides" (Stats. 2018, ch. 1015, § 1, subd. (b)), while nothing in those findings or any of the various committee reports on the measure reflect any similar concern with correcting errors in past factfinding.

True, but what does it matter? Petitioners in Strong's position are not seeking correction of an erroneous special circumstance finding. (See *People v. York, supra*, 54 Cal.App.5th at p. 260, rev.gr. ["[t]he fact that the special circumstance finding will be vacated as a result of a successful challenge to the murder conviction does not mean the special circumstance itself was challenged in the [former] section 1170.95 proceeding"].) They are, instead, seeking prospective relief from a murder conviction that was presumptively valid at the time, invoking the Legislature's later conclusion that some such convictions do not reflect sufficient individual culpability to warrant punishment for murder, with the determination of the conviction's validity to be judged by standards clarified in *Banks* and *Clark*. Their arguments may lack merit, and a trial

court may ultimately determine that resentencing is unavailable. But there is nothing in section 1172.6 to indicate that such arguments may be made only after a petitioner has had the prior special circumstance findings set aside in a separate habeas corpus or other proceeding.

## III.

While the Attorney General argues that the text of section 1172.6 categorically precludes relitigation of major participant and reckless indifference findings, amicus curiae the Office of the State Public Defender (OSPD) invokes the statutory text in support of the opposite position: that the Legislature did not intend for any type of prior Penal Code section 190.2 finding to be treated as conclusive in resentencing proceedings. We reject the argument. While the text does not support the Attorney General's categorical rule foreclosing reexamination of all special circumstance findings, it does not support a rule categorically throwing all such findings open to relitigation, either.

OSPD's argument relies on section 1172.6, subdivision (d)(2), discussed above, which says that in the event of a prior special circumstance finding favorable to the defendant, the court should skip straight to resentencing, without first holding an evidentiary hearing. (§ 1172.6, subd. (d)(2).) Of course, subdivision (d)(2) says nothing about the conclusive effects of prior findings *adverse* to the defendant. But OSPD reasons that because (1) the Legislature expressly provided that a favorable finding would be conclusive, but (2) did not provide the same for adverse findings, (3) it must have intended adverse findings to have no effect on resentencing.

We are unpersuaded. This is not a case like *Gikas v. Zolin* (1993) 6 Cal.4th 841, in which the statutory scheme made clear that the Legislature had comprehensively considered the potential uses of certain findings in later, related proceedings. (*Id.* at pp. 851–852.) Section 1172.6 addresses only the effect of one specific pair of findings at one specific stage of the proceedings, after a prima facie case has already been found; it does not address what effect any other types of prior jury findings should (or should not) have, nor does anything address what effect prior findings should have at other stages of the proceedings (such as determining whether a prima facie case has been made in the first place). (See *People v. Price*, *supra*, 71 Cal.App.5th at p. 1152, rev.gr. [former § 1170.95, subd. (d)(2) does not support inference that Legislature intended petitioners to be able to freely relitigate all other findings]; *People v. Allison* (2020) 55 Cal.App.5th 449, 460 ["The Legislature could not and did not need to spell out every ground for denying a petition"].)

In any event, OSPD's argument proves too much. The argument is not limited to findings rendered before *Banks* and *Clark*; if accepted, it would mean that even adverse findings rendered after *Banks* and *Clark* would have no effect in a subsequent resentencing proceeding — even though every appellate court to consider the issue, and both parties here, agree that post-*Banks* and *Clark* findings ordinarily do foreclose section 1172.6 resentencing. Nor is it clear that the argument is limited to felony-murder special-circumstance findings. If subdivision (d)(2) raises an inference that such findings are open to reexamination and relitigation in a section 1172.6 proceeding, it is unclear why it does not raise a similar inference for every other finding that might ordinarily be dispositive, such as a

20

special circumstance finding that requires proof of intent to kill. (See, e.g., Pen. Code, § 190.2, subd. (a)(1), (7)–(13), (15)–(16), (18)–(21).) But as Strong himself acknowledges, the structure of the statute — which permits trial courts to consult the record of conviction to determine whether the defendant has made out a prima facie case of eligibility (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 970–971), and which notably does not open resentencing to every previously convicted murder defendant — strongly suggests the Legislature contemplated that many, and perhaps most, such findings would be given effect on resentencing. Had the Legislature intended to permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing, we expect it would have said so more plainly. (See *Whitman v. American Trucking Assns., Inc.* (2001) 531 U.S. 457, 468 [under the no-elephants-in-mouseholes canon, we infer legislatures do not hide profound changes in ancillary provisions]; accord, *Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1135.)

## IV.

## A.

Because the text of section 1172.6 does not speak in any direct way to the issue before us, we turn to background principles for guidance. In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel. (*Samara v. Matar* (2018) 5 Cal.5th 322, 327; *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) This common law doctrine is "grounded on the premise that 'once an issue has been resolved in a prior proceeding, there is no further

factfinding function to be performed.' " (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 864.) The doctrine " 'has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.' " (*Ibid.*) It applies in criminal as well as civil proceedings. (See, e.g., *Ashe v. Swenson* (1970) 397 U.S. 436, 443–444; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341–351.)

As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court, supra,* 51 Cal.3d at p. 341.) And while these threshold requirements are necessary, they are not always sufficient: "Even if the[] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles" of promoting efficiency while ensuring fairness to the parties. (*Gikas v. Zolin, supra,* 6 Cal.4th at p. 849; see also, e.g., *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 835 ["collateral estoppel will apply in any setting *only* where such application comports with fairness and sound public policy"].) It is the burden of the party seeking to prevent relitigation based

on prior findings to raise the defense and establish its elements. (*Lucido*, at p. 341.)

The Attorney General's argument that prior special circumstance findings always foreclose relief in section 1172.6 proceedings is, in effect, an argument that such findings are always preclusive. Although nothing in the statute says so expressly, we agree that such findings *can* have preclusive effect. After all, ordinarily "courts may take it as given that [a legislature] has legislated with an expectation that the principle [of issue preclusion] will apply . . . ." (*Astoria Federal S. & L. Assn. v. Solimino* (1991) 501 U.S. 104, 108.) But it does not follow that special circumstance findings always have preclusive effect, regardless of whether they were issued before or after *Banks* and *Clark*.

Even when the threshold requirements for issue preclusion are met, one well-settled equitable exception to the general rule holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue. (See, e.g., Rest.2d Judgments, § 28, subd. (2) [a prior finding is not preclusive when "a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws"].) As the high court explained more than a half century ago: "[A] judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." (*Commissioner v. Sunnen* (1948) 333 U.S. 591, 600; see *Montana v. United States* (1979) 440 U.S. 147, 155, 161–162.) The Courts of Appeal in this

state have likewise long recognized that changes in the law may supply a basis for denying a prior determination preclusive effect. (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1069; *Ronald F. v. State Dept. of Developmental Services* (2017) 8 Cal.App.5th 84, 93; *Huber v. Jackson* (2009) 175 Cal.App.4th 663, 678; *United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 616; *Powers v. Floersheim* (1967) 256 Cal.App.2d 223, 230.)

This exception ensures basic fairness by allowing for relitigation where "the change in the law [is] such that preclusion would result in a manifestly inequitable administration of the laws." (Rest.2d Judgments, § 28, com. c, pp. 276–277.) It also reflects a recognition that in the face of this sort of legal change, the equitable policies that underlie the doctrine of issue preclusion — "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation" (*Lucido v. Superior Court*, *supra*, 51 Cal.3d at p. 343) — are at an ebb. The integrity of the judicial system may be compromised by inconsistent determinations — but so might it be compromised by fastidiously insisting on identical determinations even when a material change in the governing law calls for a different outcome in a second proceeding. Concerns about judicial economy and vexatious litigation likewise have little purchase when there has been a significant change in the law that applies to determination of the relevant issue.

*Banks* and *Clark* represent the sort of significant change that has traditionally been thought to warrant reexamination of

an earlier-litigated issue. Our earlier discussion of habeas corpus petitioners who have obtained relief from their felony-murder special circumstances in the wake of *Banks* and *Clark* (*ante* at pp. 7–8) does much to explain why: There are many petitioners with pre-*Banks* and *Clark* felony-murder special-circumstance findings who nevertheless could not be convicted of murder today. Senate Bill 1437 requires petitioners seeking resentencing to make out a prima facie case that they "could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) A pre-*Banks* and *Clark* special circumstance finding does not negate that showing because the finding alone does not establish that the petitioner is in a class of defendants who would still be viewed as liable for murder under the current understanding of the major participant and reckless indifference requirements. (*People v. Wilson* (2021) 69 Cal.App.5th 665, 685, review granted Dec. 22, 2021, S271604; *People v. Torres*, *supra*, 46 Cal.App.5th at pp. 1179–1180, rev.gr.)

Some Courts of Appeal have cited countervailing fairness considerations in support of adopting a categorical bar against resentencing for petitioners with pre-*Banks* and *Clark* felony-murder special-circumstance findings. These courts have raised concerns that nothing in the text or history of section 1172.6 indicates the Legislature intended different treatment for two similarly situated groups, those with pre- and those with post-*Banks*/*Clark* findings. (See *People v. Nunez*, *supra*, 57 Cal.App.5th at p. 97, rev.gr.; *People v. Allison*, *supra*, 55 Cal.App.5th at p. 459; *People v. Galvan*, *supra*, 52 Cal.App.5th at p. 1143.) We are unmoved, since the two groups are not

25

similarly situated: One has been determined, beyond a reasonable doubt, to have acted as a major participant with reckless indifference to human life as those terms are now understood under *Banks* and *Clark*, and the other has never been the subject of such a determination.

Nor are we moved by any concern that allowing relitigation in some circumstances would unfairly require the prosecution to prove major participation and reckless indifference beyond a reasonable doubt for a second time. (See, e.g., *People v. Nunez*, *supra*, 57 Cal.App.5th at p. 96, rev.gr.; *People v. Jones*, *supra*, 56 Cal.App.5th at p. 485, rev.gr.; *People v. Gomez*, *supra*, 52 Cal.App.5th at p. 17, rev.gr.) For petitioners with pre-*Banks*/*Clark* findings, no judge or jury has ever found the currently required degree of culpability for a first time. Allowing reexamination of the issue under these circumstances does not permit "a second bite of the apple" because the changes in the law mean there is now "a different apple." (*People v. Ruiz*, *supra*, 49 Cal.App.5th at p. 1069, italics omitted.)[3]

## B.

The Attorney General argues that if we conclude that section 1172.6 does not categorically bar reexamination of prior major participation and reckless indifference findings in light of *Banks* and *Clark*, the reexamination should be limited. He points to a line of appellate cases that have concluded that pre-*Banks* and *Clark* findings do not pose a categorical bar to

---

[3] We disapprove *People v. Galvan*, *supra*, 52 Cal.App.5th 1134 and *People v. Allison*, *supra*, 55 Cal.App.5th 449 to the extent they are inconsistent with the views expressed in this opinion.

resentencing but have proposed that a court may reject a petition at the prima facie stage if it independently examines the record and determines, applying the *Banks* and *Clark* standards, that sufficient evidence supports the earlier findings. (See, e.g., *People v. Wilson, supra*, 69 Cal.App.5th at pp. 685–686, rev.gr.; *People v. Pineda* (2021) 66 Cal.App.5th 792, 801, review granted Sept. 29, 2021, S270513; *People v. Secrease, supra*, 63 Cal.App.5th at p. 236, rev.gr.)

According to the leading decision in this line, the main obstacle to granting conclusive effect to pre-*Banks* and *Clark* findings does not lie in the different standards under which those findings were made by the trier of fact; the standard jury instruction has not in fact changed in the wake of *Banks* and *Clark*.[4] (*People v. Secrease, supra*, 63 Cal.App.5th at p. 256, rev.gr.) Rather, the "heart of the problem" is that pre-*Banks*/*Clark* findings, unlike post-*Banks*/*Clark* findings, have never been subjected to judicial scrutiny under the correct standards. (*Ibid.*) This omission, they reason, can be cured by a court conducting such a review at the prima facie stage of a section 1172.6 proceeding. (*Secrease*, at pp. 259–261.)

---

[4] The jury instruction on the special circumstance, CALCRIM No. 703, was not amended after *Banks* and *Clark* to require instruction on the factors discussed. Instead, these factors were included in brackets as optional additions for the trial court to consider giving in its discretion. (See CALCRIM No. 703 (2021); Judicial Council of Cal., Crim. Jury Instns. (2021), Bench Notes to CALCRIM No. 703, pp. 419–420; *People v. Secrease, supra*, 63 Cal.App.5th at p. 252, fn. 12, rev.gr.; *People v. Allison, supra*, 55 Cal.App.5th at p. 458; *People v. Price* (2017) 8 Cal.App.5th 409, 449–451.)

The difficulty with this approach is that the differences between pre- and post-*Banks* and *Clark* findings are much greater than this line of cases acknowledges — greater, too, than their proposed remedy can adequately address. Although the mandatory instructions did not change in the wake of *Banks* and *Clark*, much else about the trial environment did. For one, the arguments available to counsel changed significantly after this court offered a range of guiding factors and made clear that simple participation in, e.g., a "garden-variety armed robbery" was not sufficient, without more, to establish the truth of the felony-murder special circumstance. (See *Banks*, *supra*, 61 Cal.4th at p. 802.) The newly articulated guiding factors might also have altered what evidence defense counsel would have sought to introduce. And more broadly, the clarifications *Banks* and *Clark* offered about the height of the bar needed to prove a felony-murder special-circumstance finding might have fundamentally altered trial strategies, causing some defendants to focus on proving they were guilty at most of a noncapital homicide once *Banks* and *Clark* created more daylight between the proof required to convict of murder and the proof required to convict of special circumstance murder. As for instructions, after *Banks* and *Clark*, defense counsel could have asked that optional additional instruction on the *Banks* and *Clark* factors be given to guide the jury in its deliberations (see *ante,* fn. 4), with the possibility that different outcomes might have resulted.

An after-the-fact court review of a pre-*Banks* and *Clark* record does not account for all these differences. The prior findings were made to a beyond-a-reasonable-doubt degree of certainty, but under outdated legal standards. The Attorney General's proposed review would apply the correct legal

standards, but would not involve a determination beyond a reasonable doubt that they were met. Indeed, it could not; such a determination would entail factfinding prohibited at the prima facie stage. (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 972.) And as the Legislature has made explicit in a recent amendment to the predecessor to section 1172.6, a court determination that substantial evidence supports a homicide conviction is not a basis for denying resentencing after an evidentiary hearing. (Former § 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2 ["A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing"].) Nor, then, is it a basis for denying a petitioner the opportunity to have an evidentiary hearing in the first place.[5]

Section 1172.6 offers resentencing for petitioners who have not been determined beyond a reasonable doubt to have the degree of culpability now required for a murder, attempted

---

[5] In his briefing and at oral argument, the Attorney General argued that on direct appeal and in habeas corpus proceedings, defendants raising challenges under *Banks* and *Clark* to special circumstance findings have been afforded review for sufficiency of the evidence (see, e.g., *People v. Williams* (2015) 61 Cal.4th 1244, 1280–1282; *In re McDowell* (2020) 55 Cal.App.5th 999, 1011–1015) and so a similar level of review ought to be enough to determine whether resentencing is foreclosed in a section 1172.6 proceeding. The Legislature's recent amendments to the statute make clear, however, if previously there was doubt, that section 1172.6 relief is not necessarily confined to those who might have been able to obtain relief through sufficiency-of-the-evidence claims raised on direct appeal or through functionally similar claims raised on habeas corpus.

murder, or manslaughter conviction. Neither the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause.

## V.

We turn, finally, to the application of these principles in this case.

Here, a 2014 jury found beyond a reasonable doubt that Strong acted as a major participant with reckless indifference to human life.

In 2015, *Banks* substantially clarified the law surrounding major participant findings. (*Banks*, *supra*, 61 Cal.4th at pp. 797–804.) A year later, *Clark* recited the teachings of *Banks* on the major participant question and then substantially clarified the relevant considerations for determining whether a defendant has acted with reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at pp. 611–623.) For reasons we have explained, unless a defendant was tried after *Banks* was decided, a major participant finding will not defeat an otherwise valid prima facie case. And unless a defendant was tried after *Clark* was decided, a reckless indifference to human life finding will not defeat an otherwise valid prima facie case.

Because Strong's case was tried before both *Banks* and *Clark*, the special circumstance findings do not preclude him from making out a prima facie case for resentencing under section 1172.6. The trial court and Court of Appeal erred in concluding otherwise.

## VI.

We reverse the judgment of the Court of Appeal and remand for further proceedings not inconsistent with this opinion.


**KRUGER, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**GUERRERO, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Strong

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 12/18/20 – 3d Dist.
**Rehearing Granted**

_____

**Opinion No.** S266606
**Date Filed:** August 8, 2022

_____

**Court:**  Superior
**County:**  Sacramento
**Judge:**  Patrick Marlette

_____

**Counsel:**

Deborah L. Hawkins, under appointment by the Supreme Court, for Defendant and Appellant.

Jonathan E. Demson as Amicus Curiae on behalf of Defendant and Appellant.

Michelle May Peterson for Santa Clara County Independent Defense Counsel Office as Amicus Curiae on behalf of Defendant and Appellant.

Mary K. McComb, State Public Defender, and AJ Kutchins, Deputy State Public Defender, as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General,

Daniel B. Bernstein, Rachelle A. Newcomb and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Deborah L. Hawkins
Attorney at Law
1637 East Valley Parkway, PMB 135
Escondido, CA 92027
(760) 294-2181

Eric L. Christoffersen
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 95821
(916) 210-7686

AJ Kutchins
Deputy State Public Defender
1111 Broadway, Suite 1000
Oakland, CA 94607
(510) 267-3300