Filed 11/14/22 P. v. Dunson CA4/2
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JACKIE LYNN DUNSON,<br><br>    Defendant and Appellant. | E074818<br><br>(Super.Ct.No. INF065236)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Reversed.

Eric Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan Amann and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

1

In November 2007, defendant Jackie Lynn Dunson was involved with her brother and several other men in the robbery and murder of William Dobbs. Dobbs was beaten and his ATM card was stolen. Dobbs's body was found in a desolate area several days later. He had been stabbed 14 times in the head and neck, and his throat was cut.

Defendant was convicted of first degree murder and the special circumstance that the murder was committed during the commission of a robbery. Defendant was sentenced to life without the possibility of parole. In 2015, defendant's convictions were affirmed on appeal in *People v. Jackie Lynn Dunson* (Feb. 26, 2015, E056565) [nonpub. opn.] (Opinion).[1] On February 6, 2019, defendant filed her petition for resentencing pursuant to Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) and former Penal Code section 1170.95[2] (petition). The petition was summarily denied by the trial court.

Defendant appealed the summary denial of the petition to this court. In an unpublished opinion, we affirmed the denial of the petition finding, based on the state of the law at the time, that a true finding on the robbery-murder special circumstance allegation necessarily rendered her ineligible for section 1172.6 relief.

Defendant filed a petition for review, which was granted. On October 19, 2022, the California Supreme Court transferred the matter back to this court with instructions to vacate our previous decision and reconsider the cause in light of *People v. Strong* (2022)

---

[1] We take judicial notice of our prior Opinion on our own motion.

[2] All further statutory references are to the Penal Code unless otherwise indicated. In addition, section 1170.95 was renumbered effective June 30, 2022 to section 1172.6. (Stats. 2022, c. 58 (A.B. 200), § 100, eff. June 30, 2022.) We will refer to the new numbering in this opinion.

13 Cal.5th 698 (*Strong*). In *Strong*, the California Supreme Court found that felony murder special-circumstance findings issued by a jury before the decisions of *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified the terms "major participant" and "reckless indifference to human life" in the special-circumstance statute, do not preclude a defendant from making out a prima facie case for resentencing of a felony-murder conviction, even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*.

The parties filed supplemental briefs. Defendant contends we must reverse the trial court's order denying his petition, and remand the matter to allow the trial court to conduct further proceedings under section 1172.6. The People concede that remand is appropriate. We concur. We remand the matter to the trial court for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

A.    UNDERLYING FACTS AND CONVICTIONS[3]

In November 2007, defendant and her brother Robert Dunson (Robert) lived in the ground floor apartment of a two-story duplex in Indio. Rogelio Zuniga and his girlfriend, M.J., lived in the apartment above the Dunsons' apartment. Fernando Benavidez was Jackie's boyfriend and visited at the apartment occasionally. Defendant sometimes would engage in prostitution and Benavidez would bring her clients, or "dates."

On November 25, 2007, M.J., Benavidez, Robert, Zuniga and defendant were at the Dunsons' apartment. Benavidez offered to find someone to bring back to the

---

[3] The facts are taken from the Opinion.

3

apartment to have sex with defendant. Robert did not want his sister to engage in sex for money, so he proposed that they bring a man "back to the apartment, beat his ass, rob him, and take all of his shit." Defendant nodded her head in agreement. Zuniga said nothing. Benavidez left the apartment to find someone and M.J. and Zuniga went back to their upstairs apartment.

A surveillance videotape from the Spotlight 29 casino, which was approximately five minutes from the Dunsons' apartment, showed Benavidez entering the casino just after midnight during the morning of November 26, 2007. He eventually was able to persuade the victim, William Dobbs, to come with him to the Dunsons' apartment. They drove together in Dobbs's car.

At some point that night or early morning, M.J. woke to the voice of a man in the Dunsons' apartment screaming: "Oh, God. Please help me." M.J. described the screaming as "gut wrenching," "like someone is in pain, like they were hurt [and] screaming for someone to help them." She also heard "very loud" sounds of banging on a wall downstairs, "like something pretty heavy slamming up against the wall." Zuniga told M.J. to go back to sleep.

In the predawn hours of November 26, 2007, T.S., who was friends with Robert and defendant, walked to the Dunsons' apartment. As she approached, she saw Benavidez walking away from the apartment. When she got closer to the apartment, she heard defendant arguing, yelling, and crying. T.S. heard Jackie say, "he was acting stupid," and "[h]e doesn't want to give [the money] to her." A side door to the apartment was ajar. As T.S. passed by that door, she heard Robert yelling loudly and angrily,

4

" '[g]et down, mother fucker' " and "[t]hese better be the right PIN numbers." T.S. watched Robert push a man to his knees. The man appeared to have blood under his chin. Robert then put a plastic bag over the man's head and used duct tape to secure the bag to the man's neck and face. T.S. decided to leave. As she left, she heard Robert say: "Come on, mother fucker. We're going for a ride."

Robert recruited Zuniga to help him. Defendant watched as Zuniga and Robert drove off with Dobbs in Dobbs's car. M.J. asked for Zuniga, and defendant told her that he and Robert had to go somewhere but that they would back.

At 4:50 a.m., defendant attempted to withdraw $500 from an ATM machine using Dobbs's bank card. The attempt was denied because it exceeded the daily withdrawal limit for the account. She then successfully withdrew $200 from the ATM. An attempt to obtain an additional $200 was denied.

M.J. went downstairs to the Dunsons' apartment the morning of November 27. Robert was kneeling in a corner of the living room scrubbing the walls with bleach and pulling up the carpet. He gave M.J. a bank card and a piece of paper with a PIN number written on it and told her to pull out as much money as she could and bring it back to him. Between 10:26 a.m. and 11:39 a.m. on November 27, M.J. and Zuniga used Dobbs's bank card to retrieve approximately $1,000 from different ATMs. When she and Zuniga returned to the Dunsons' apartment, she gave him $300, the bank card, and the piece of paper with the PIN number. M.J. kept the remaining cash.

Dobbs's body was found on November 27 two miles from the Spotlight 29 casino; he had a black bag attached to his neck with red tape. He had been stabbed with a sharp

5

instrument 14 times, mostly on his face and neck. His internal and external jugular veins and carotid artery were severed, and his trachea was also severed. He had bruises and abrasions on his face and scalp, and signs of blunt force trauma to his chest. He had four broken ribs, which caused ruptures to his liver and lung. The forensic pathologist who performed the autopsy on Dobbs described the injuries as "brutal," and said it "looked like perhaps some injuries were inflicted for the purpose of torture" and for "causing pain."

Dobb's car was found on December 1, 2007, approximately 100 yards from the Dunsons' apartment. Defendant later told T.S. that Robert had killed a man and that she had used his ATM card.

Defendant was tried with Handwerk and Benavidez. She was charged with the first degree murder of Dobbs (§ 187, subd. (a)) and the special circumstance that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)). Defendant was tried under the theories of aiding and abetting and felony murder. The jury was instructed that they must determine as to the robbery-murder special circumstance as follows: "If a defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he or she acted with either the intent to kill or with reckless indifference to human life and was a major participant in the crime for the special circumstances of robbery to be true. If the People have not met this burden, you must find this special circumstance has not been proved true for that defendant." Defendant was found guilty and was sentenced to life without the possibility of parole.

6

B.    PRIOR APPELLATE PROCEEDINGS

Defendant filed an appeal.  She made several claims on appeal, including that there was insufficient evidence presented to support that she was a major participant and acted with reckless indifference to life to support the robbery-murder special circumstance.  We rejected this claim finding that the jury could have reasonably found that defendant was a major participant in the plan and acted with reckless indifference to human life.

C.    PETITION

On February 6, 2019, defendant filed her petition in pro. per.  In her petition, she stated that she had been convicted of first or second degree murder based on the felony murder rule.  She declared that she was not the actual killer, she did not have the intent to kill and was not a "major participant" nor acted with "reckless indifference to human life during the course of the crime or felony."

On March 19, 2019, the People filed a response.  On April 12, 2019, the petition was denied but there is no record of the proceedings.  Defendant filed a second petition pursuant to then-section 1170.95 on July 29, 2019, which was identical to the petition.

The parties thereafter filed several documents with the trial court.  In those documents, defendant argued that the true finding on the robbery-murder special circumstance did not necessarily mean she was ineligible for relief under section 1172.6. Defendant relied on *Banks* and *Clark*, both decided after she was convicted, to support that she could not be found guilty of the robbery-murder special circumstance under the law as written today.  The People responded defendant was found by the jury to be a

7

major participant and acted with reckless indifference to life, and that finding was upheld by the Court of Appeal.

The petition was heard on February 14, 2020. The trial court ruled, "So—I've said this a number of times. It is this Court's belief that 1170.9[5] provides a remedy for individuals who have not had the trier of fact determine[] beyond a reasonable doubt that one of three predicates are true: They are the actual killer; they acted with the specific intent to kill; or they were a major participant acting with reckless disregard. [¶] In this particular case, [defendant] has had the trier of fact conclude that one of those predicates is true. They concluded it beyond a reasonable doubt in their opinions. That was the trial court. That was the jury. [¶] And the sufficiency of that finding has been specifically reviewed on direct appeal, and the Court of Appeals opined as follows for similar reasons: . . ." The trial court then quoted this court's finding in the Opinion as to the sufficiency of the evidence of the robbery-murder special circumstance. The trial court concluded, "As such, [defendant] has had all that the law provides her. She has had a finder of fact determine beyond a reasonable doubt that one of the current predicates is true, and the sufficiency of that finding has been tested by the appellate court. This petition is denied."

## DISCUSSION

In light of the Supreme Court's decision in *Strong*, *supra*, 13 Cal.5th 698, remand to the trial court for further proceedings is necessary.

SB 1437 became effective January 1, 2019. "[SB 1437] modified California's felony murder rule and natural and probable consequences doctrine to ensure murder

8

liability is not imposed on someone unless they were the actual killer, acted with the intent to kill, or acted as a major participant in the underlying felony and with reckless indifference to human life." (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 220.) As relevant here, SB 1437 added section 189, subdivision (e), which provides, "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) Section 190.2, subdivision (d) provides, "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4."

SB 1437 also created a process through which convicted persons can seek resentencing if they could no longer be convicted under the reformed homicide law. (§ 1172.6, subd. (a).) If the petitioner makes a prima facie showing he or she is eligible

for relief under section 1172.6, the court shall issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d).) At this hearing, either party may present new evidence and the prosecution bears the burden of proving the petitioner could still be convicted beyond a reasonable doubt. (§ 1172.6, subd. (d)(3).)

In *Strong*, the California Supreme Court resolved a split of the Courts of Appeal as to whether a special circumstance finding reached prior to *Banks* and *Clark* precluded relief under section 1172.6. *Banks* and *Clark* "substantially clarified the law" regarding what it means to be a major participant who acts with reckless indifference to human life for the purposes of the special circumstance statute. (*Strong*, *supra*, 13 Cal.5th at pp. 706-707, 721.) The *Strong* court concluded that where a defendant's "case was tried before both *Banks* and *Clark*, . . . special circumstance findings do not preclude him [or her] from making out a prima facie case for resentencing under section 1172.6." (*Strong*, *supra*, 13 Cal.5th at p. 721.) A court "err[s] in concluding otherwise." (*Ibid*.)

In this case, defendant was convicted of the special circumstance that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)). Such finding predated *Banks* and *Clark*. Hence, the special circumstance finding did not preclude her from "making out a prima facie case for resentencing under section 1172.6." (*Strong*, *supra*, 13 Cal.5th at p. 721.)

In addition, this court cannot look to the record to determine whether defendant would have been convicted after *Banks* and *Clark*. Based on the change in requirements for a true finding on a special circumstance after *Banks* and *Clark,* defense counsel in a case may have "have altered what evidence" would have been introduced and may have

10

"fundamentally altered trial strategies" (*Strong*, *supra*, 13 Cal.5th at p. 719.) "An after-the-fact court review of a pre-*Banks* and *Clark* record does not account for all these differences. . . . And as the Legislature has made explicit in a recent amendment to the predecessor to section 1172.6, a court determination that substantial evidence supports a homicide conviction is not a basis for denying resentencing after an evidentiary hearing. [Citation.] Nor, then, is it a basis for denying a petitioner the opportunity to have an evidentiary hearing in the first place." (*Id.* at p. 720, fn. omitted.) "For petitioners with pre-*Banks/Clark* findings, no judge or jury has ever found the currently required degree of culpability for a first time. Allowing reexamination of the issue under these circumstances does not permit 'a second bite of the apple' because the changes in the law mean there is now 'a different apple.' " (*Id.* at p. 718.)

As such, after *Strong*, "[n]either the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause." (*Strong*, *supra*, 13 Cal.5th at p. 720.) Accordingly, we must remand the matter for the trial court to issue an order to show cause and, to the extent necessary, conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d)(1) & (3).)

### DISPOSITION

The order denying defendant's petition is reversed. On remand, the trial court shall issue an order to show cause and conduct an evidentiary hearing as required by

section 1172.6, subdivisions (c) and (d)(3). We express no opinion regarding the appropriate outcome.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.