Filed 12/7/22  P. v. Mendez CA5
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>SCOTT ALLEN MITCHELL MENDEZ,<br><br>  Defendant and Appellant. | F081193<br><br>(Super. Ct. No. CF93485197)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Eric M. Christoffersen, Lewis A. Martinez, Jennifer Oleska and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Detjen, Acting P. J., Smith, J. and Snauffer, J.

## INTRODUCTION

Appellant Scott Allen Mitchell-Mendez appeals the trial court's denial of his petition for resentencing filed under former Penal Code section 1170.95.[1] We previously affirmed the court's order in an unpublished opinion (*People v. Mitchell-Mendez* (November 15, 2021, F081193 [nonpub. opn.]), concluding that Mitchell-Mendez was ineligible for relief as a matter of law based upon the jury's finding that the murder occurred during the commission of a robbery, and that Mitchell-Mendez had acted as a major participant in the robbery with reckless indifference to human life. (Pen. Code,[2] § 190.2, subd. (a)(17).)

Our Supreme Court granted review of Mitchell-Mendez's case and transferred the matter back to this court with directions to vacate our decision and to reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). In *Strong*, our Supreme Court held that a pre-*Banks*/*Clark*[3] felony-murder special circumstance finding does not render a former section 1170.95 petitioner ineligible for relief as a matter of law. (*Strong*, at p. 703.)

We invited the parties to submit supplemental briefing concerning the effect of *Strong* on Mitchel-Mendez's case. Mitchell-Mendez argued that *Strong* compels reversal of the trial court's order. The Attorney General agrees.

In conformity with our Supreme Court's directive, we order our prior decision vacated and for the reasons stated herein, we reverse the trial court's order denying Mitchell-Mendez's petition for resentencing. On remand, the trial court is directed to

---

[1]    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). Mitchell-Mendez filed his petition prior to this renumbering, and he therefore referred to the statute as section 1170.95 in his petition.

[2]    All undefined statutory citations are to the Penal Code unless otherwise indicated.

[3]    *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

issue an order to show cause and to hold an evidentiary hearing on the petition (§ 1172.6, subds. (c)-(d)).

## PROCEDURAL HISTORY

On May 5, 1993, the Fresno County District Attorney filed an information charging Mitchell-Mendez, Demetrius Dixon, Valunt Montgomery with first degree murder (§ 187) and second degree robbery (§§ 211, former 212.5, subd. (b).)  It was further alleged that the murder was committed during the course of a robbery (§ 190.2, subd. (a)(17)(A)), and that Mitchell-Mendez personally used a knife in the commission of the murder and the robbery.

On October 14, 1993, a jury found Mitchell-Mendez guilty on counts.  The jury also found true the special circumstance (§ 190.2, subd. (a)(17)(A)), but found not true the enhancement alleging Mitchell-Mendez had personally used a knife in the commission of the offenses.

On November 19, 1993, Mitchell-Mendez was sentenced to an indeterminate term of life without the possibility of parole.

On April 10, 1996, this court affirmed Mitchell-Mendez's judgment of conviction following his direct appeal in *People v. Mendez et. al*. (Apr. 10, 1996, F020673 [unpub. opn.]).

On January 1, 2019, Senate Bill No. 1437 became effective.  (Stats. 2018, ch. 1015.)  That measure amended sections 188 and 189 eliminating the felony murder rule and the natural and probable consequences doctrine as these theories of vicarious liability relate to murder.  (Stats. 2018, ch. 1015, §§ 2, 3.)

On January 25, 2019, Mitchell-Mendez filed a petition for resentencing under former section 1170.95.  His petition was denied for failing to include a signed declaration.

On May 29, 2019, Mitchell-Mendez filed a renewed petition for resentencing.

On March 17, 2020, the superior court issued a written order denying Mitchell-Mendez's petition. The superior court's order observed that Mitchell-Mendez was convicted of a special circumstance based on the fact that the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)). The jury's true finding on the special circumstance necessarily required the jury to find Mitchell-Mendez was a major participant in the robbery and that he had acted with reckless indifference to human life. On appeal, this court affirmed the special circumstance, finding substantial evidence in support of the jury's finding. (*People v. Mendez et. al.*, *supra*, F020673, pp. 84-85.) The superior court concluded the special circumstance finding excluded Mitchell-Mendez from relief under former section 1170.95 as a matter of law.

On November 15, 2021, this court affirmed the trial court's order denying Mitchell-Mendez's petition for resentencing. (*People v. Mitchell-Mendez, supra,* F081193.)

On October 26, 2022, following a petition for review filed by Mitchell-Mendez, our Supreme Court granted review of Mitchell-Mendez's case and transferred the matter back to this court with directions to vacate our prior decision and to reconsider the matter in light of *Strong*.

## **FACTS**

The following statement of facts are derived from this court's unpublished opinion in *People v. Mendez et. al.*, *supra*, F020673. This factual summary is recited for the limited purpose of providing context to Mitchell-Mendez's criminal conviction:

On November 15, 1992, at approximately 2:37 a.m., Fresno Police Officer Robinson responded to a report of a deceased person at an apartment complex on North Hughes in Fresno. Jaime Irizarry was found lying face down, dead in the parking stall of the apartment complex. His throat had been slit and he had a small puncture wound in his back. Both of Irizarry's wounds were consistent with having been inflicted from behind by a left-handed person. Irizarry's keys and his vehicle were missing.

4.

On November 23, 1992, Irizarry's vehicle was found behind the residence of Donna Lane, a woman with whom Mitchell-Mendez was acquainted. The vehicle had been stripped, and the vehicle identification number had been destroyed.

On November 24, 1992, Irizarry's chrome rims were found on Mitchell-Mendez's vehicle and Irizarry's keys were found in Mitchell-Mendez's bedroom. Mitchell-Mendez was arrested. In a voluntary statement he made to police, he told Fresno Police Detective Wells that he, Eric Beeks, Montgomery, and Dixon were driving around looking for a set of car wheels to steal. Mitchell-Mendez began following Irizarry's vehicle which he thought had a nice set of wheels on it.

The group followed Irizarry back to his apartment complex, where they discussed stealing Irizarry's vehicle. According to Mitchell-Mendez, he and Beeks waited in the car while Montgomery and Dixon walked toward the parking lot where Irizarry had driven. The group planned to reconvene at Lane's backyard, where they would strip Irizarry's vehicle.

Between 3:00 and 4:00 a.m., Mitchell-Mendez and Beeks arrived at the prearranged location and found Irizarry's car in the backyard, but Montgomery and Dixon were not there. Mitchell-Mendez and Beeks drove to a house where Montgomery and Dixon had been staying. They found Montgomery and Dixon there.

Mitchell-Mendez, Dixon, and Montgomery walked back to Lane's house and began stripping Irizarry's vehicle. It was at this time that Mitchell-Mendez claimed he learned someone had been killed. Mitchell-Mendez admitted he had previously claimed responsibility for Irizarry's murder, but denied killing him and denied having any knowledge that someone would be killed.

On November 27th, Montgomery voluntarily came into the police department to give a statement. Montgomery admitted that he and Dixon assisted Mitchell-Mendez in taking some rims from a vehicle after the vehicle's owner was killed. In a subsequent

5.

interview, Montgomery told Detective Wells he had witnessed the murder, and that Mitchell-Mendez was responsible for it.

Montgomery claimed the group had planned to steal some rims, tie up the owner, and drop the victim off somewhere in the country to " 'let him walk home.' " However, after the group followed Irizarry's car to the apartment complex, Beeks gave Mitchell-Mendez a knife. When Montgomery caught up with Mitchell-Mendez, he saw Mitchell-Mendez grab Irizarry from behind and place the knife to Irizarry's neck. Montgomery heard Irizarry say, " ' "Don't kill me, don't kill me." ' " Mitchell-Mendez forced Irizarry to lie face down on the ground. Montgomery thought Mitchell-Mendez was going to tie Irizzary up with a rope.

Mitchell-Mendez grabbed a handful of Irizarry's hair, pulled his head back, and then sliced Irizarry's throat with his knife. He took a few steps before returning to Irizarry and sticking his knife into Irizarry's back " 'really hard.' "

When Detective Wells told Montgomery he did not think Montgomery was being truthful, Montgomery claimed his story was true, except that it was Dixon who committed the murder, not Mitchell-Melendez. Montgomery claimed that he and Dixon, who had also come into the police department that day to give a statement, had arranged to tell the same story because Mitchell-Mendez stated he would " ' "take the wrap." ' "

On December 8th, when Dixon gave a statement to police detectives in which he claimed that Mitchell-Mendez had committed the murder. Dixon said that Mitchell-Mendez ordered Irizarry out of the car at gunpoint, and as Irizarry was lying facedown on the ground, Mitchell-Mendez lifted Irizarry's head and used the knife to cut Irizarry's throat.

As all Mitchell-Mendez, Montgomery, and Dixon were individually interviewed by Detective Wells, he noticed that Mitchell-Mendez and Montgomery were right-handed and Dixon was left-handed.

## ANALYSIS

Mitchell-Mendez contends the trial court erroneously denied his petition for resentencing under former section 1170.95 based upon the fact that the robbery-murder special circumstance was found true more than 20 years prior to our Supreme Court's decisions in *Banks, supra,* 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522. The Attorney General agrees, as do we.

In *Strong*, our Supreme Court held that where a petitioner's case "was tried before both *Banks* and *Clark*, the special circumstance findings do not preclude him from making out a prima facie case for resentencing under section 1172.6." (*Strong*, *supra*, 13 Cal.5th at p. 721.) Our Supreme Court reasoned that section 1172.6 requires the petitioner to make a prima facie showing that he could not be convicted of murder under the amended versions of sections 188 and 189, and "[a] pre-*Banks* and *Clark* special circumstance finding does not negate that showing because the finding alone does not establish that the petitioner is in a class of defendants who would still be viewed as liable for murder under the current understanding of the major participant and reckless indifference requirements." (*Strong*, at pp. 717-718.) "This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*." (*Strong*, at p. 710; see *People v. Montes* (2021) 71 Cal.App.5th 1001, 1008 [trial court may not deny § 1172.6 petition at prima facie stage based on its own determination defendant was major participant in felony and acted with reckless disregard for human life].) Thus, "[n]either the jury's pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause." (*Strong*, at p. 720.)

Here, the jury's true finding on the robbery-murder special circumstance occurred in 1993, more than two decades before our Supreme Court's decisions in *Banks* and *Clark*. *Strong* makes clear that the jury's finding on the special circumstance does not

7.

preclude Mitchell-Mendez from stating a prima facie case for relief. (*Strong, supra*, 13 Cal.5th at p. 721.)

Following *Strong*, we conclude that Mitchell-Mendez's petition alleged the facts necessary for relief under former section 1170.95, and the superior court erred by summarily denying his petition based on the jury's findings on the special circumstance allegation. Accordingly, we will reverse the trial court's order and remand the matter to the court with directions to issue an order to show cause and to hold an evidentiary hearing. (§ 1172.6, subds. (c), (d); *Strong, supra,* 13 Cal.5th at pp. 708-709; *People v. Duchine* (2021) 60 Cal.App.5th 798, 816.)

## DISPOSITION

This court's opinion filed on November 15, 2021 is vacated. The trial court's order denying Mitchell-Mendez's petition for resentencing under former section 1170.95 is reversed. The matter is remanded to the superior court with directions to issue an order to show cause and to hold an evidentiary hearing. (§ 1172.6, subds. (c)-(d).)