Filed 9/25/23  P. v. Conchas CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND FRANK CONCHAS,<br><br>    Defendant and Appellant. | B320546<br><br>(Los Angeles County<br>Super. Ct. No. GA094259) |

APPEAL from an order of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

In 2013, appellant Raymond Conchas devised a plan with fellow gang members Peter Parra and Kevin Cabrera to rob drug dealer Zane Goldstein[1] under the guise of buying marijuana from him. During the attempted robbery, Parra fatally shot Zane. All three defendants were convicted of first degree murder. The jury also found true the special circumstance allegation under Penal Code section 190.2, subdivision (a)(17)[2] that the defendants committed the murder while attempting to commit a robbery and that appellant and Cabrera, while not the actual killers, were major participants in the attempted robbery and acted with reckless indifference to human life.

In 2019, appellant filed a petition for resentencing under section 1172.6 (former section 1170.95).[3] Following appointment of counsel and a hearing, the trial court denied the petition, finding that appellant was not eligible for relief because he was a major participant and acted with reckless indifference.

Appellant does not challenge on appeal that he was a major participant in the attempted robbery. He argues the evidence contradicts the court's finding that he pointed a shotgun at Zane. Consequently, he contends that there was insufficient evidence to support a finding that he acted with reckless indifference under

---

[1] Zachary Goldstein, Zane's brother, was present during the incident and testified at trial. We refer to Zane and Zachary by their first names to avoid confusion.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. We hereafter refer to the statute as section 1172.6.

the factors outlined in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). We conclude substantial evidence supports the superior court's findings and therefore affirm the denial of appellant's petition for resentencing.

## FACTUAL BACKGROUND

The underlying facts presented at trial are discussed in detail in this court's prior opinion, *People v. Parra* (February 24, 2017, B263792) [nonpub. opn.] (*Parra*). We summarize them here to provide context for the trial court's ruling. We otherwise do not rely on this factual background in resolving the issues presented in this appeal. (See § 1172.6, subd. (d)(3).)

## I. Prosecution Case

Appellant, Parra, and Cabrera were members of the North Side Pasadena (NSP) gang. On January 13, 2013, two days before the shooting, appellant received a text from another gang member with the contact information for Zane, "a white boy that sells weed." Appellant made multiple calls to Cabrera and Parra on January 14 and 15, 2013. On January 15, the day of the shooting, appellant exchanged texts with Zane, asking to buy marijuana later that afternoon. Appellant asked Zane to meet him at an apartment complex on North Holliston Avenue in Pasadena.

Zane drove his Jeep to the apartment complex accompanied by his brother Zachary. Zachary testified at trial that after they arrived, a heavy-set Hispanic man wearing a black sports jersey, whom he identified as Cabrera, approached the Jeep and asked Zane to drive into the driveway of the complex. Zane agreed.

Directed by Cabrera, Zane drove down the driveway and turned into a parking stall at the end. He left the engine

3

running. Cabrera entered the back seat of the Jeep behind the driver's side, next to Zachary.  As soon as he did so, Zachary saw a taller, lankier, Hispanic man approach the driver's side of the Jeep carrying a single-barrel, sawed-off shotgun.  Zachary also described this man as having a bald or shaved head, and wearing a white tank top and jeans; he did not recall seeing any tattoos on the man's arm.  Zachary identified this man at the preliminary hearing and trial as appellant, the tallest of the three defendants. He testified at trial that he got a good look at the person and he was certain that it was appellant who pointed the shotgun.[4]  The man pointed the shotgun at Zane's face, and said, "Don't move or I'll blast you." Zane backed out of the parking space and sped forward out of the driveway, with Cabrera still in the backseat.

Zane drove around the corner and stopped. Zane and Zachary yelled at Cabrera to get out. Cabrera refused and demanded the marijuana. Cabrera then said he had a gun, and told Zane, "Give me the weed.  You want your homie [referring to Zachary] to get blasted?"

Zachary testified that he saw no weapon and thought Cabrera might be bluffing.  He began pushing Cabrera out of the Jeep, but Cabrera resisted.  Zachary eventually was able to eject Cabrera from the Jeep.  At that point, Zachary heard "the sound of a weapon going off" and the shattering of glass, but did not see

---

[4]      It is undisputed that Parra was bald at the time of the incident; appellant had "buzzed" dark hair and tattoos on his right arm.  Parra was wearing a white tank top and appellant was wearing a dark shirt. A neighbor testified at trial that he heard a voice say, "Get the fuck out."  He looked out his window, and saw two men next to an SUV.  One of them had dark hair, and the second one was either bald or had a shaven head.

a shooter because his view was obstructed by the driver's seat. Zane's head snapped back against the driver's headrest, and Zachary was wounded in the forearm by a projectile. Zachary saw a four-door tan car stopped alongside the Jeep. Cabrera got in the rear passenger side of the car, and the car drove off. Zachary saw two other people in the car, seated in front.

Zachary called 911, reporting that three Hispanic men tried to rob him and his brother, that one of them shot Zane in the head, that the men had a shotgun and a pistol, and that the shooter and his companions drove off in a tan car.

Zane died of a single gunshot wound to the head. The windshield of his Jeep had an impact hole and pieces from a shotgun shell were found on the ground outside the Jeep on the driver's side. Police recovered appellant's cell phone from the back seat of Zane's vehicle.[5]

The prosecution played footage at trial of surveillance videos taken from nearby cameras on Holliston. The videos depicted events before and after the shooting, but were not clear enough to identify the faces of the people shown. The videos showed Zane's Jeep stopping in the street at the apartment complex on Holliston. Three people were concealed behind a hedge at Tyler Alley, which opened onto Holliston. One person, identified by witnesses as Cabrera, approached the Jeep. The two others, identified as appellant and Parra, remained behind the hedge. The Jeep then pulled into the driveway of the

---

[5] Police also seized appellant's tan Toyota Camry from an apartment complex where his mother and sister lived. The hubcaps had been removed, and the entire vehicle had been wiped down.

5

complex. As soon as it did so, appellant and Parra walked from behind the hedge down Holliston and into the driveway where the Jeep had gone.

The videos then depicted the Jeep exiting the driveway and turning right on Holliston. Appellant exited the driveway and ran back down Tyler Alley. Parra followed, taking the same route and walking with an apparent limp.[6] Then a tan sedan backed out of Tyler Alley, and followed the Jeep.

Ashley Ceballos, Cabrera's girlfriend, was interviewed by police detectives on January 23, 2015. Ceballos said that she and Cabrera spent the night before the shooting at the home of a friend named Belin, which was walking distance from the crime scene. On the day of the shooting, sometime after 12:00 p.m., appellant, Parra, and appellant's girlfriend, Stephanie Jacequez, arrived at Belin's home. Ceballos gave appellant money to buy marijuana for her. He, Parra, and Cabrera left a short time later.

Ceballos told police that she and Jacequez left and walked to the corner of Holliston. They saw appellant and Parra jogging toward appellant's car, parked in Tyler Alley. The car backed quickly out of the alley and sped off down Holliston. Appellant was driving, and Parra was in the passenger seat. Ceballos walked down Holliston, then heard what sounded like a firecracker.

Ceballos identified all three defendants in the surveillance footage. She identified Parra as the person walking with a limp and told police that Parra had not walked like that when she had seen him earlier in the day.

---

[6]     It was suggested at trial that Parra was walking in this manner because he had a shotgun concealed in his pant leg.

6

## II. Defense

Appellant testified on his own behalf. He admitted becoming an NSP member in 2012, but claimed he was never active in the gang.

On January 13, 2013, fellow NSP member Cabrera asked appellant to drive him to buy marijuana. Appellant declined, but then heard from a friend about Zane, a local marijuana dealer. Appellant testified that Cabrera borrowed appellant's cell phone on January 14, 2013 during a family party and failed to return it. The next day, the day of the incident, appellant went to Belin's house to retrieve his phone from Cabrera. Cabrera and Ceballos were there, and Ceballos asked appellant to drive her to a medical marijuana shop. Appellant declined, but gave Cabrera Zane's contact information. Appellant testified that Cabrera used appellant's phone to contact Zane and asked appellant to attend the meeting with him. While they were waiting, Parra arrived at Belin's house. Appellant acknowledged that Parra was an NSP member, but testified at trial that he did not know Parra was going to be there that day.

Cabrera, Parra, and appellant went to meet Zane. While in the alley near the street, Cabrera said he was going to "buy the weed real quick," and told appellant and Parra to wait. The Jeep drove down a driveway out of sight with Cabrera walking alongside. Suspicious, appellant followed, as did Parra, and saw the Jeep pull into the carport.

Before appellant reached the Jeep, it backed up and sped out of the driveway. As it did so, Cabrera's leg and jacket were hanging out of the open rear passenger door. Concerned for Cabrera's safety, appellant ran to his car in the alley and

7

followed the Jeep. Parra also got into appellant's car, sitting in the front passenger seat.

Appellant testified that as he turned the corner, he saw Cabrera struggling with someone inside the Jeep. Appellant drove up to the Jeep, but "before [he] could put the car in park, [he] heard a pop." Cabrera jumped into appellant's car and appellant began to drive away. He looked back and saw "a big old hole in the windshield" of the Jeep. Appellant claimed that he never saw anyone with a gun that day. While driving back to Belin's house, however, Parra told appellant to keep his mouth shut or he and Jacequez would be hurt.

On cross-examination, appellant admitted that when he stopped next to Zane's Jeep, Parra exited the passenger side. Appellant then "heard a pop. [Parra] jumped back in. [Cabrera] jumped in the back seat, and I took off." When Parra reentered the car, he was carrying a short barrel shotgun. Appellant claimed he had not seen Parra with the shotgun before the shooting.

Appellant identified all three defendants in the surveillance videos. He admitted that the videos showed Parra walking "with a slight affect to his body," when he walked from the carport after Zane's Jeep left with Cabrera inside. But appellant denied noticing that Parra moved awkwardly during the incident, and denied that the reason Parra was walking in that manner was because he had concealed a shotgun in his pants.

## PROCEDURAL HISTORY

### I.    Conviction and Sentence

Appellant, Parra, and Cabrera were jointly tried. A jury convicted all three defendants of first degree murder (§ 187, subd.

8

(a); count 1) and found true the attempted-robbery-murder special circumstance (§ 190.2, subd. (a)(17)).  The jury also convicted defendants of attempted second degree robbery (§§ 664/211; count 2), and conspiracy to commit robbery (§ 182, subd. (a)(1); count 3).  On the conspiracy count, the jury found true the overt act that appellant pointed a loaded shotgun at the victim.  As to all counts, the jury found that a principal discharged a firearm (a shotgun) causing death (§ 12022.53, subds. (d) and (e)(1)), and that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).

The trial court sentenced appellant to life without the possibility of parole on count 1, plus 25 years to life for the firearm enhancement under section 12022.53, subdivisions (d) and (e)(1).  The court also imposed terms of two years on count 2, life without parole on count 3, and 25 years to life for the firearm enhancement on each count, but stayed those sentences pursuant to section 654.

A different panel of this court affirmed the convictions of appellant, Parra, and Cabrera on direct appeal.[7]  As relevant here, appellant argued that the evidence was insufficient to support the jury's true finding on the attempted robbery-murder special circumstance because it failed to prove that he acted with reckless indifference to human life in aiding and abetting the attempted robbery.  (See *People v. Parra, supra.*)  This court reviewed the factors under *Banks, supra,* 61 Cal.4th 788 and concluded there was "no question that substantial evidence

---

[7]    The court remanded the matter for correction of several sentencing errors.  (See *People v. Parra*, *supra*.)

9

showed" that appellant was a major participant who acted with reckless indifference.[8] (See *People v. Parra, supra*.) Citing the cell phone evidence, this court found that appellant "was the mastermind of the plan to rob Zane, the culmination of which was Zane's death." (*People v. Parra, supra*.)

In addition, the court relied on Zachary's testimony identifying appellant as the one who pointed a shotgun at Zane in the carport and threatened to kill him. Notably, the court expressly rejected appellant's contention that Zachary's identification was unreliable. The court found that "Zachary's identification of Conchas as the one who pointed the shotgun at Zane and threatened to kill him was not physically impossible: Conchas was present in the carport, and Zachary personally observed the assailant with the shotgun. Further, even though the evidence suggested that Parra carried the shotgun stuffed down a pant leg when he returned from the carport to Tyler Alley, and later used it when he shot Zane after the pursuit, it is not physically impossible that Conchas, after using the gun in the carport, gave it to Parra to conceal and carry after the robbery was interrupted. In short, Zachary's identification of Conchas as the person who used the shotgun in the carport constituted substantial evidence of that fact." (See *People v. Parra, supra*.)

---

[8] The jury made the special circumstance finding prior to our Supreme Court's decisions in *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522, which clarified the law regarding major participants in an underlying offense who act with reckless indifference to life. As such, on appeal this court independently analyzed whether the evidence supported the jury's finding under section 190.2 under the standards established by *Banks* and *Clark*.

10

The court also noted that in convicting appellant of conspiracy, the jury found true the alleged overt act that he "pointed a loaded shotgun at the victim."  (*People v. Parra, supra.*)

The court also reasoned, "Considering Conchas' awareness 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants' (*Banks, supra*, 61 Cal.4th at p. 803), the jury could infer that Conchas knew the inherent danger involved when he and fellow NSP gang members planned to rob a marijuana dealer using a sawed-off shotgun after luring him to a place of seclusion." (*People v. Parra, supra.*)  Further, the court found that appellant was "'present at the scene of the killing, in a position to facilitate or prevent the actual murder.'"  (*Id.*, quoting *Banks*, *supra*, 61 Cal.4th at p. 803.)  The court noted that after Zane drove out of the complex, appellant pursued him in his vehicle, "carrying Parra, who was then armed with a shotgun."  The court rejected as "unlikely" appellant's testimony that he did not notice Parra was armed, particularly given the finding that appellant had pointed a weapon at Zane just moments before.  (*People v. Parra, supra.*)  The court also found that appellant "'play[ed] a particular role in the death.' ([*Banks*, *supra*, 61 Cal.4th at p. 803].)  He drove the shooter, Parra, to the scene of the shooting, and stopped next to Zane's car, which allowed Parra to get out and shoot Zane. After the shooting, Parra got back in, Cabrera entered, and Conchas drove off with the two men he had recruited to rob Zane, leaving Zane fatally wounded." (*People v. Parra, supra.*)

11

## II.     Section 1172.6 Proceedings
### A.     *Petition and response*

On January 14, 2019, appellant filed a form petition for resentencing under section 1172.6.  He checked the boxes indicating that he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of first degree felony murder because he was not the actual killer, was not a major participant in the underlying felony, and did not act with reckless indifference to human life during the course of the felony.  The court appointed counsel for appellant.

In March 2019, the People filed an opposition to the petition, contending that the statute was unconstitutional.  In June 2019, the People filed a supplemental opposition.  The People conceded that appellant had been convicted under the felony-murder rule, but argued he was ineligible for relief on the grounds that he was a major participant in the underlying felony and acted with reckless indifference to human life.  Citing the factors set forth in *Banks*, the People argued that all three defendants "planned and coordinated the robbery of Zane Goldstein," and each "played a significant role," in the criminal enterprise.  The People cited the evidence that both appellant and Parra were armed with firearms, appellant pointed a shotgun at Zane and threatened to "blast" him, appellant and Parra pursued the vehicle after Zane resisted, and all three defendants fled together after Parra shot Zane.  The People also requested that the court take judicial notice of the prior decision of this court in *People v. Parra, supra.*  The court granted that request, with no objection by appellant.

12

In March 2020, appellant filed a reply brief arguing that he had established a prima facie case for resentencing, and requesting that the court issue an order to show cause and set the matter for an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3). He asserted that he did not have a firearm during the attempted robbery and that there had not been any plan to kill anyone, and therefore that he did not act with reckless indifference to human life.

## B. *Hearing and decision*

The court issued an order to show cause, and held an evidentiary hearing on April 29, 2022. The People relied on the prior appellate decision, the preliminary hearing transcripts, and the evidence presented at trial. Appellant's counsel conceded in his opening statement that appellant was a major participant in the attempted robbery, but argued that appellant's petition should be granted because he did not act with reckless indifference to human life.

Appellant testified and called Stephanie Jacequez as a witness on his behalf. He also submitted four exhibits—surveillance video clips, two photographs of the apartment complex, and one photograph of the carport.

Jacequez, who was not called as a witness during the trial, testified that in 2013 she was living with appellant and their children. On the day of the incident, she and appellant went to Cabrera's residence around noon. To her knowledge, appellant was not armed. She also did not see Cabrera or Parra with any weapons that day. She testified that at the time, appellant had a "sleeve" of tattoos covering his right forearm. She reviewed the surveillance video, which she described as "blurry," but identified Parra as the bald individual wearing a white shirt. She also

13

identified appellant as the individual running down the driveway from the carport.  Appellant testified that on the day of the incident, he and Jacequez went to Cabrera's house and he and Cabrera discussed getting marijuana.  He acknowledged that he was not completely truthful during his testimony at trial and that he lied about his "involvement in planning the robbery."  He previously testified that he had no intention to rob anyone, but in fact he and Cabrera planned to arrange to buy marijuana from Zane.  When Zane arrived, "it was going to be a basic snatch and grab. . . .  Show us the marijuana.  One of us grabs the weed, runs, and after one would be a distraction in case there is a pursuit."  Appellant also admitted that he contacted Zane by text message and "basically put the plan into effect, and that he had lied at trial when he claimed he had given his phone to Cabrera.  He said he lied at trial because his prior attorney told him that if he was involved in the robbery, he could be convicted for the murder.  He claimed that Parra was not part of the plan.  Appellant did not have a weapon at any point that day, nor did Cabrera; consequently, he did not think the attempted robbery would create any danger to human life.

Viewing the video footage, appellant testified that he had a "buzzed cut" with short black hair, wearing a black short-sleeved shirt, black and white checkered shorts, white socks, and white shoes.  He also had tattoos on his right forearm. He identified Cabrera as wearing blue jeans and a black and white jacket, and Parra as bald and wearing all white.  On that day, he gave Zane the address of the apartment complex on Holliston to meet them.  Parra arrived at the "last minute"; appellant and Cabrera informed Parra of the robbery plan while they were walking to

14

meet Zane.  He did not see Parra with a weapon when Parra arrived.

Appellant explained that the plan was once the Jeep arrived, Cabrera would enter the car and ask to see the marijuana.  Once the marijuana was shown, Cabrera was supposed to snatch the drugs and run through the alley.  Appellant planned to stay in the alley and stop anyone who pursued Cabrera.  They had not planned for the Jeep to pull into the driveway, so once it did, appellant and Parra walked after it to see what was happening.  By the time appellant neared the Jeep, it was backing out rapidly.

Appellant also testified that after the Jeep left with Cabrera inside, he pursued it to help Cabrera.  Appellant was not armed.  He acknowledged that the video showed Parra walking oddly, but insisted he did not see a gun on Parra.  Appellant ran to his car and Parra got in the passenger side. Appellant did not see any weapon on Parra at that time and saw nothing to make him suspicious that Parra might have a gun.  Appellant drove around the corner and saw the Jeep parked on the street.  Appellant pulled his car in front of the Jeep.  He testified that the following events happened "so fast."  As he pulled over, Parra jumped out of the car.  Then appellant "heard a pop."  He "immediately hit the gas" out of fear after hearing the gunshot, and Parra and Cabrera jumped in the car as it was moving.  As he was driving away, appellant looked back and saw a hole in the Jeep's windshield.  He did not see anyone get shot. He did see Parra with a single barrel shotgun, approximately 10 inches long, when Parra got back in the car.  When Parra reentered the car, appellant realized that Parra had fired the shotgun, but appellant was not aware that Zane had been killed until later.

15

During cross-examination, appellant acknowledged that Parra was a fellow NSP gang member. He also acknowledged that the plan was to "put up a fight" if anyone pursued Cabrera after he grabbed the marijuana. He agreed that drug dealing can be a dangerous business and he had no idea if Zane would be armed.

At the continued hearing on May 4, 2022, the court admitted appellant's exhibits without objection and took judicial notice of the transcript of testimony from the trial. Appellant's counsel argued that there was insufficient evidence for the court to find beyond a reasonable doubt that appellant knew that Parra was armed. He also argued that appellant could not have done anything to stop Parra from shooting Zane. The court took the matter under submission.

The court issued a written decision on May 6, 2022, denying appellant's petition. The court discussed the *Banks* factors, concluding that appellant was a major participant in the criminal enterprise that led to Zane's death, and that appellant acted with reckless indifference to human life.

Specifically, the court found that cell phone evidence introduced at trial established that appellant was "the mastermind of the plan to rob Mr. Goldstein, the culmination of which was Mr. Goldstein's death." The court also rejected as "not credible" appellant's testimony during the evidentiary hearing that he was not armed at any point during the incident, noting that at trial, appellant "was identified by a witness as a person who pointed a shotgun at Mr. Goldstein during the attempted robbery and threatened to kill him." The court continued, "[i]n considering whether [appellant] was aware of the particular dangers posed by the nature of the crime at issue in

16

this case, it is quite reasonable to infer that [appellant] as a member of the North Side Pasadena street gang, knew the inherent dangers of the crimes at issue in this case when he and other members of his gang made a plan to rob an individual selling marijuana using a sawed off shotgun after luring the intended victim into a place of seclusion."

The court also found that the evidence presented at trial established that appellant "was present at the scene of the killing, in a position to facilitate or prevent the actual murder. The jury heard testimony that [appellant] pursued Mr. Goldstein in his car with his co-defendant Mr. Parra, who was armed with a shotgun that ultimately fired the fatal shot." The court again found appellant was not credible either at trial or during the hearing when he testified that he was not aware that Parra was armed, based on "a review of all the evidence in his case." Thus, the court concluded that "[t]he totality of all the evidence produced both at the trial . . . and at the evidentiary hearing regarding this petition leads this Court to the conclusion that [appellant] was a major participant in the attempted robbery in this case, and that he acted with a reckless indifference to human life."

Appellant timely appealed.

## DISCUSSION

### I.    Governing Law

Section 189 was amended in 2019 to limit liability for murder under a felony-murder theory to a participant who (1) was "the actual killer," (2) "with the intent to kill," aided or abetted "the actual killer in the commission of murder in the first degree," or (3) "was a major participant in the underlying felony and acted with reckless indifference to human life as described in

subdivision (d) of Section 190.2." (§ 189, subd. (e)(1)-(3); see *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) The language of section 189, subdivision (e)(3) tracks the language of the robbery-murder special provision in section 190.2, subdivision (d), both requiring a finding that a participant was a "major participant" in the underlying felony (here, an attempted robbery) and acted with "reckless indifference" to human life. (See §§ 189, subd. (e)(3), 190.2, subd. (d).)

Section 1172.6 permits individuals who were convicted of felony murder or murder under a natural and probable consequences theory, but who could not be convicted of murder following the changes to section 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1172.6, subd. (a).)

At the evidentiary hearing on a section 1172.6 petition, the People have the burden of proving beyond a reasonable doubt "that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) At the hearing, the court "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (*Ibid.*) Additionally, both the petitioner and the People "may also offer new or additional evidence to meet their respective burdens." (*Ibid.*) "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the

18

prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid*.) Resentencing is unavailable if the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life. (*Strong, supra*, 13 Cal.5th at p. 710.) The trial court acts as an independent factfinder and determines whether the prosecution has met its burden. (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 984 (*Ramirez*).)

## II.    Standard of Review

On appeal from an order denying a section 1172.6 petition after an evidentiary hearing, we review the trial court's factual findings for substantial evidence. (*People v. Richardson* (2022) 79 Cal.App.5th 1085, 1090; *People v. Clements* (2022) 75 Cal.App.5th 276, 298 (*Clements*).) "The scope of our review for substantial evidence is well settled. The test is not whether the People met their burden of proving beyond a reasonable doubt that [a defendant in a section 1172.6 proceeding] was ineligible for resentencing, but rather 'whether any rational trier of fact could have' made the same determination, namely that '[t]he record ... disclose[s] . . . evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [as did the superior court].'" (*People v. Williams* (2020) 57 Cal.App.5th 652, 662-663, quoting *People v. Zamudio* (2008) 43 Cal.4th 327, 357; see also *People v. Cody* (2023) 92 Cal.App.5th 87, 111.) Thus, our job on review "is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements, supra*, 75 Cal.App.5th at p. 298.)

19

"'In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [superior court] could reasonably have deduced from the evidence.  [Citation.] "Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends."'" (*People v. Williams, supra*, 57 Cal.App.5th at p. 663, citations omitted; *People v. Cody, supra,* 92 Cal.App.5th 87, 112-113 ["Our role is not to reweigh the evidence, nor is it our role to judge the credibility of witnesses."].)  "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 639.)

### III.    *Banks* and *Clark*

In *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522, our Supreme Court "clarified the meaning of the special circumstances statute"  (*In re Scoggins* (2020) 9 Cal.5th 667, 674) and set forth the factors relevant to determining whether a defendant is a major participant in a felony who acted with reckless indifference to life.  The major participant and reckless indifference factors "significantly overlap" in that "'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.'"  (*Clark, supra*, 63 Cal.4th at pp. 614-615, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 153 (*Tison*).)

In *Clark, supra*, 63 Cal.4th at pp. 618-623, the court set forth a nonexhaustive list of factors relevant to determining

whether a defendant acted with reckless indifference to human life. The first factor relates to weapons:  Was the defendant aware that weapons would be used in the felony?  Did the defendant use a weapon?  How many weapons were used in the crime?  (*Clark, supra*, 63 Cal.4th at p. 618.)  The court cautioned that "[t]he mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life."  (*Ibid*.; see also *id*. at p. 617, fn. 74 ["A robbery in which the only factor supporting reckless indifference to human life is the fact of the use of a gun is what we meant by 'a garden-variety armed robbery' in *Banks*, *supra*, 61 Cal.4th at p. 802."].)  The second factor is the defendant's physical proximity to the murder and the events leading up to it, and the opportunities that proximity afforded to restrain the crime or aid the victim.  (*Clark, supra*, 63 Cal.4th at p. 619.)  The third factor is the duration of the felony, particularly the duration of the interaction between victims and perpetrators; more prolonged incidents provide "'a greater window of opportunity for violence.'"  (*Id*. at pp. 620-621.)  The fourth factor is the defendant's awareness of codefendants' propensity for violence or likelihood of killing a victim.  (*Id*. at p. 621.)  The final factor is the defendant's efforts to minimize the risk of violence during the felony, though the court cautioned that "some effort to minimize the risk of violence does not, in itself, necessarily foreclose a finding that defendant acted with reckless indifference to human life." (*Id*. at pp. 621-622.)

No single factor is determinative.  (*Clark, supra*, 63 Cal.4th at pp. 618, 621–623.)  Instead, courts must assess the totality of a defendant's culpability along a spectrum. (See *Strong, supra*, 13 Cal.5th at p. 705.)  At the least culpable end of the spectrum is

the defendant in *Enmund v. Florida* (1982) 458 U.S. 782, a getaway driver who was a "'minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state,'" and thus was minimally culpable for the murder that ensued. (*Banks, supra*, 61 Cal.4th at p. 800.). At the other, highly culpable, end of the spectrum are the defendants in *Tison, supra*, 481 U.S. 137, who "had broken convicted murderers out of jail, armed them, captured an innocent family, 'held [the family] at gunpoint while the two murderers deliberated whether the family should live or die, [and] then stood by while all four members were shot.'" (*Strong, supra*, 13 Cal.5th at p. 705, quoting *Banks, supra*, 61 Cal.4th at p. 802.)

A defendant's youth at the time of the crime "is a relevant factor in determining whether the defendant acted with reckless indifference to human life." (*Ramirez, supra*, 71 Cal.App.5th at p. 987, citing *In re Moore* (2021) 68 Cal.App.5th 434, 453-454 (*Moore*).) This is because children generally lack the experience, perspective, and judgment of adults, and are also generally less responsible and mature. (*Moore, supra*, 68 Cal.App.5th at p. 453.) As with the other factors, youth alone is not dispositive. (*In re Harper* (2022) 76 Cal.App.5th 450, 470.)

At bottom, "[r]eckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death'" (*In re Scoggins, supra*, 9 Cal.5th at p. 676, quoting *Tison, supra*, 481 U.S. at p. 157), and "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the [appellant] does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 63 Cal.4th at p. 617.) Although recklessness has a subjective

22

element, "it is the jury's objective determination that ultimately determines recklessness"; "a defendant's good faith but unreasonable belief that he or she was not posing a risk to human life in pursuing the felony does not suffice to foreclose a determination of reckless indifference to human life." (*Id*. at p. 622.)

## IV. Analysis

Appellant does not challenge the trial court's finding that he was a major participant in the attempted robbery. Instead, he argues only that there was insufficient evidence to support the finding that he acted with reckless indifference to human life. Applying the factors identified by *Clark*, and viewing the totality of the circumstances, we conclude the record contains sufficient evidence from which the trial court could conclude beyond a reasonable doubt that appellant acted with reckless indifference to human life.

Appellant's central focus is on the trial court's finding that appellant pointed the shotgun at Zane and threatened to "blast" him. Appellant argues that this finding is "contrary to the evidence," pointing to Zachary's testimony that the person with the shotgun was wearing a white shirt and jeans, was bald, and Zachary did not see any tattoos on the man's arms. This evidence, he argues, unequivocally matches the description of Parra, not appellant.

"While an appellate court can overturn a judgment when it concludes the evidence supporting it was 'inherently improbable,' such a finding is so rare as to be almost nonexistent. "'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be

apparent without resorting to inferences or deductions." [Citations.] Such cases are rare indeed.'" (*People v. Ennis* (2010) 190 Cal.App.4th 721, 728–729.) Appellant recognizes this weighty standard, but suggests that this case is one such rarity. We disagree.

As appellant notes, there was inconsistent evidence regarding the identity of the assailant who pointed the shotgun at Zane. These inconsistencies were presented at trial and the jury nevertheless found that appellant wielded the shotgun. In appellant's direct appeal, this court found that substantial evidence supported the jury's verdict and expressly rejected appellant's argument that Zane's identification was mistaken. Subsequently, following the evidentiary hearing on appellant's resentencing petition, the same judge who presided over appellant's trial found that appellant had pointed the shotgun at Zane. We find no basis to depart from these findings. Zachary testified at trial that he got a good look at the individual pointing the shotgun and that he was certain it was appellant; he made the same identification at the preliminary hearing. Further, Zachary's testimony that the man had a shaved head and that he did not see any tattoos was not necessarily inconsistent with his identification of appellant.

Appellant suggests, without authority, that the trial court was required to find that Zachary was mistaken in his identification of appellant, rather than in his description of the assailant's clothing. We will not reweigh this evidence, and we disagree with appellant that it was physically impossible for appellant to have pointed the shotgun at Zane. The video surveillance footage showed that an individual later identified as Parra was dressed in a white shirt and jeans and that both

24

appellant and Parra followed the Jeep after Zane drove into the apartment complex. The footage did not show, however, which defendant pointed the shotgun at Zane.  Appellant was present near the Jeep at the time and Zachary identified him as the assailant with the shotgun.  Further, as this court previously noted, even if Parra was subsequently carrying the shotgun in his pant leg, it was not physically impossible that appellant first pointed the gun at Zane, then gave the gun to Parra to conceal and carry as they pursued the Jeep.

As such, the trial court's finding that appellant pointed the shotgun at Zane was supported by substantial evidence.  Thus, appellant's use of a weapon and threat to shoot Zane during the attempted robbery weighs heavily in favor of the finding that he acted in reckless disregard for human life.[9]  (See *Clark, supra*, 63 Cal.4th at p. 618.)

Similarly, we conclude that the trial court's finding that appellant was aware that Parra was armed during the course of the incident was supported by substantial evidence.  The evidence demonstrated that Parra was carrying a 10-inch

---

[9] The court's finding that appellant was armed distinguishes this case from those cited by appellant, in which the defendant was aware that his confederate was armed, but did not personally use a weapon.  (See, e.g., *Clark, supra*, 63 Cal.4th at pp. 613, 618 ["The mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life."]; *Ramirez, supra,* 71 Cal.App.5th at p. 988 [insufficient evidence of reckless indifference where "Ramirez was aware Rios had a gun and intended to use it during the carjacking"].)

shotgun when he entered the front passenger seat of appellant's car. From that evidence, along with appellant's own prior brandishing of the weapon, a factfinder could reasonably conclude that appellant was aware that Parra was armed as they began the pursuit of the Jeep. The trial court was entitled to reject appellant's testimony to the contrary, and we will not disturb that credibility finding on appeal.

The remaining *Clark* factors offer little support for appellant. He concedes that he was present at the scene of the shooting, but argues that there is no evidence that he knew Parra would shoot Zane, and that he pursued the Jeep only out of concern for Cabrera. The evidence demonstrated that appellant was present for the commission of the robbery and the shooting, and did nothing to prevent the murder. (*Clark*, *supra*, 63 Cal.4th at p. 619 ["'[i]f the defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders'"].) On the contrary, he drove his armed confederate in pursuit of the fleeing victims, then facilitated the murder by pulling his car in front of Zane's vehicle. This allowed Parra to jump out of the car, shoot Zane, and quickly jump back in, at which point appellant sped away from the scene. He made no effort to restrain Parra or aid the victim, despite his testimony that he heard the gunshot and saw the large hole in the Jeep's windshield. (See *People v. Douglas* (2020) 56 Cal.App.5th 1, 10 [defendant "displayed no interest in moderating violence or in aiding his bloody and suffering victim"].)

Appellant contends that the brief duration of the incident weighs in his favor. (See *Clark, supra*, 63 Cal.4th at p. 620 [prolonged incidents provide "a greater window of opportunity for violence"]; *Ramirez, supra*, 71 Cal.App.5th at p. 989 [appellant

26

did not have a "meaningful opportunity" to intervene in sudden and unprovoked shooting by associate].) We disagree. As planned by appellant, he and his confederates laid in wait for the victims to arrive, directed their vehicle to a secluded area, then appellant threatened Zane with a shotgun. When the attempted robbery was thwarted by Zane's decision to flee, appellant decided to continue the confrontation by pursuing the Jeep, accompanied by a fellow armed gang member, rather than taking the opportunity to de-escalate the situation. Appellant then pulled in front of the Jeep, preventing further escape and allowing Parra to confront the victims with the shotgun. As such, the incident had a more prolonged opportunity for violence than appellant suggests, which cuts against him.

We also note that the trial court's factual finding that appellant was a major participant in the underlying felony as the "mastermind" of the plan is itself supportive of the court's further factual finding that he acted with reckless indifference to human life. (See *People v. Cody*, *supra*, 92 Cal.App.5th at p. 113; see also *In re Scoggins, supra*, 9 Cal.5th at p. 677 ["The greater the defendant's participation in the felony murder, the more likely that he [or she] acted with reckless indifference to human life"]; *Tison, supra*, at p. 158, fn. 12 [a defendant's status as a major participant in the underlying felony will "often provide significant support for . . . a [reckless indifference] finding"].)

Appellant cites his youth as another factor in his favor, as he was 23 years old at the time of the shooting. While the trial court could consider appellant's age and maturity level along with the other factors, it was not required to treat it as the decisive factor. (See, e.g., *People v. Oliver* (2023) 90 Cal.App.5th 466, 489 [finding harmless error in court's failure to consider 23-

year-old defendant's age and noting that "[p]resumably, the presumption of immaturity weakens as a defendant approaches 26"]; see also *In re Harper, supra,* 76 Cal.App.5th at p. 470.)

Substantial evidence therefore supports the trial court's finding beyond a reasonable doubt that appellant acted with reckless indifference to human life. He was ineligible for resentencing under section 1172.6, and the petition was correctly denied.

## DISPOSITION

The order denying appellant's petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

CURREY, P.J.

ZUKIN, J.